8. Walker v. Acting Commissioner Berryhill 9. Mr. Forbes Thank you, Your Honor. May it please the Court, my name is Randall Forbes. I represent the disability claimant. I represented them at the district court level and at this level I did not do the hearing, nor did I do the subsequent application. The thing that I'd like the Court to focus on, among many, but primarily, is that a minimum competency of the easiest form of unskilled work is to be able to understand, remember, and carry out simple instructions and tasks. Dr. Roy is the consultative psychologist. She issued essentially three different reports in this record. And you've argued that the Social Security Administration pressured Dr. Roy to change her reports. Is there any evidence of that in the record? No, Your Honor. That's an inference based on context and the fact that I actually really don't remember ever seeing anything like this before and I've been doing this for years. Is there any evidence that the ALJ even relied on Dr. Roy's reports in reaching her conclusion? I think so. What's that? Because the ALJ gave the last report significant weight. If I could, I'd like to go through the progression of those reports. The first one basically said that the claimant had moderate to severe impairment in the ability to deal with simple and routine instructions due to memory. That's a 283 administrative record number. The second one, done about 12 days later maybe, said moderate to severe impairment due to memory. With no additional visits or information or anything? That's correct, Your Honor. The third all of a sudden changes to mild impairment due to memory. Even assuming if the third one is valid, that still doesn't rise to the level of the minimum competency of being able to understand, remember, and carry out simple instructions and tasks. That is below it. There's mild impairment to that and that is the minimum competency to work, essentially. So even if I assume that the changes were done properly and correctly, they still don't get to that point. There's one more step. In the RFC, the judge just says, is able to understand, remember, and carry out simple tasks and instructions without even recognizing that there's still a mild impairment or level below what is the minimum competency. Mr. Forbes, can I ask you what, one of the things that I think makes this case very difficult is we get to, by the time we get to 2014, Mr. Walker is disabled, right? I mean, found to be disabled. The 08 to 2014 period is a long period of time though, right after his conditions are worsening as time goes on. And by the time we hit, and this is only approximate, but by the time we hit the beginning of sometime 2013, there are increased references to the dizziness becoming more regular and intensified. So I guess one of the big questions I have here is about the onset date. And the way the case is presented, it seems like, well, it's all or nothing. You know, it's either 2008 or it's nothing. And I just wonder whether he may well have become disabled around 12 or 13. Well, he did become disabled at some point, you're correct. And if... Because he's doing okay before that, right? I mean, he's actually, isn't he the, doesn't he serve as the town council president for a while? I'm not going to dispute that fact. I'm not aware of that. And doesn't he live on his own for a four-year period after the stroke? So until about the 2012 time frame where he can take care of himself, mow his lawn? Yeah, I think probably there was more monitoring of him than may be totally apparent, but... But is that in the record? Is there any evidence of the more monitoring of him during that time frame? I thought the function reports identified instances where he was receiving help. Let me concede that for the moment. Perhaps he was able to live on his own during that four-year period. And let me concede that there was this worsening trajectory. Even if we look at the case that way, and I'm not saying we should, but even if we did look at the case that way, by 2012 the evidence lines up. And his date last insured is September 30, 2012. And that's, and in order for him to prevail on the disability insurance claim and get Medicare, that's the main date that disability has to occur before. So what's the... So page 12 of the AOJ's opinion mentions a psychological consultative exam in April of 2012, which is before that date last insured. That is correct. Where he has significant memory problems, mental status exam. He can register three words, but he can't remember any of them after five minutes. He can't do serial sevens. He can do serial threes. He can't do a three-step command. He's got various problems. That's correct, and that is Dr. Roy's first decision, which... These are also the underlying facts. I mean, we've got Dr. Roy's conclusions, but maybe this is a record in which we should look at what Dr. Roy reports. These are tests that Dr. Roy conducts. This is not him saying, you know, I don't feel good today. All right. Now, if that is matched up with the primary physician's opinion... Dr. Gowdy. Dr. Gowdy, then we have disability prior to the date last insured, and that's essentially the main argument of the disability claimant. Mr. Forbes, let me get you to react to something. I was a bit surprised, I must say, to see you refer to Dr. Gowdy. I think it's probably true with respect to his practice as a country physician, but I think what you meant by that was that you were saying, hey, give him a break a little bit on the completeness of his treatment notes. What I wondered about is, you actually think his treatment notes are that thin going back to the 08, 09 period? I took a look at them, because I was surprised by you saying that. In the 08, 09 period into 10, there are references to dizziness and imbalance and what have you. That was the disability claimant's response to the ALJ suggesting that they were less than complete, and I just wanted to bring out the point that primary care doctors usually address the ailment of the day first, and then, you know, okay? So that's where I was going there. Okay. I think you might want to stop now and save whatever else you have for rebuttal. Thank you. Ms. Schacht. Good morning. May it please the Court, my name is Meredith Schacht and I represent the Acting Commissioner of Social Security. There's no dispute in this case that Mr. Walker cannot do the things that he could do before his stroke, but that is not the standard for determining disability. The ALJ agreed here that Mr. Walker could no longer perform his past work, but he could nonetheless perform this limited range of sedentary work, and her conclusions were supported by substantial evidence and consistent with the law. And this is the stage where the burden of proof is on the Commissioner. Stage five. Step five. With regard to adducing evidence that there are other jobs in the economy, but the burden of proof of establishing disability, establishing what Mr. Walker's abilities were, remained with him. I'm not going to get through all of that, but the ALJ, for instance, does record the findings that were made in this test that Dr. Roy conducted before she starts drawing conclusions. The Wechsler memory scale, four test, and all the rest of these things. And there are, from Dr. Gowdy, reports of unpredictable dizziness that go all the way back to 2009. Yes, Your Honor, and there were occasional reports of dizziness. And he's reluctant to drive because of the dizziness. Now, mind you, he did still drive, but he kept it to shorter distances. I know, but I'm not sure that's such a great thing. I don't necessarily disagree with you, but he was comfortable enough to take himself Well, he was, to take himself to the doctor and to the store. He lived on his own. He says he tries not to go very far due to dizzy spells, headache, and lightheadedness. I mean, I don't know about you, but I mean, the people who are out there driving who pass out sometimes inflict harm on others, doesn't necessarily mean that we should take this as a great skill of his. And nobody would encourage him to drive if he were uncomfortable doing so, but the ability to drive is also not the standard for disability here. He was able to provide for himself for many years after his stroke. He lived on his own, and it wasn't clear exactly when he moved back in with his mother, but for at least three years, maybe up to five years on his own, going to the store, making sure that he had food, taking care of his own home. It was a house that he took care of, and ultimately, he said he moved back in with his mother because he wasn't supposed to be on ladders, and it was becoming difficult to keep up his home. So it wasn't even these mental deficits. Do we have any information about whether these daily activities are being done at the pace that work would have to be done at? I mean, it's one thing to vacuum your living room and then sit down and take a break for half an hour. It's quite another thing to hold down a responsible job. Of course, Your Honor, and the ALJ did not equate his regular activities to full-time work. She didn't say that the fact that he could perform these activities meant that he could perform at a certain pace at work. Instead, what she said was, these were still significant activities. He has made allegations of disabling... But it's episodic, right? I mean, he's not dizzy every minute of the day. So where he notes he's been involved, as Judge Scudder mentioned, is town council president. First of all, one assumes maybe those were good times, and if he got dizzy in the chair, everybody waited for a few minutes. I don't know. Well, just to correct a factual point, I think he was actually completed his time on the town board just before he had his stroke. So I think that actually predated his stroke, to be clear about what's in the record. Just, I think he testified, yes, it was lucky that my term had just ended. I didn't get re-elected because then I had the stroke and had a recovery period afterwards. Which is not to say that he wasn't active in the community. He went with his mother to church. He went to these genealogy meetings. You think there's a possibility it just wor... Let me ask the question this way. Could the ALJ have determined that, look, by approximately the fall of 13, this condition is worsening? I mean, we have such a long period of time here. It is a long period, and it's entirely possible that it worsened. I would point out, though, that he was found disabled in December of 2014 based essentially on a change in his age category. So the residual functional capacity identified in the determination of disability in December 2014 is quite similar to what the ALJ came up with in this case. But because he was nearing this new age category of closely approaching advanced age under our regulations, if you're limited to sedentary work in that closely approaching advanced age and you have no prior skills or experience that you can transfer, you're automatically disabled. That's 55, is that right, or 50? I think it was 55. I'm not certain. I know he was about two and a half months before his birthday, and so they applied yet another sort of obscure policy, which is if you are in a borderline age range, you're about to change age categories, they will consider you in the later age range. Did the ALJ sufficiently consider what does appear to be a change in his condition around the 2012 time period? That's where you see the medical records really talking more frequently about his abilities and his dizziness. He moves out of the house and in with his mom somewhere around that time period, although the exact date is not precise. Did she sufficiently consider that change, and if so, why? She did, Your Honor. She acknowledges all of that evidence. The ALJ discussed the dizziness. She discussed and specifically noted that these reports of dizziness became more frequent in 2013, 2014. She took that into consideration in determining that he should not do anything more than sedentary work and that he needed additional restrictions on workplace hazards, that he shouldn't be exposed to situations where he could hurt himself because of the dizziness. So yes, she didn't deny any of this evidence. She didn't ignore any of the evidence. What she did was she did her job as an ALJ, which was to assess the evidence. I think she too discounted, though, one of the things that concerns me, in keeping with what Judge St. Eve is asking, is that Dr. Gowdy's August 2012 letter is quite discounted. And it's discounted because it's viewed as infringing on the prerogative of a bit of the commissioner by offering an ultimate opinion on disability. I'd say, well, OK, fine. Set the ultimate opinion aside. But here you have a long-time treating physician that's observing, as I think Judge St. Eve is asking, that by that period of time, he's having serious trouble. The fact that— I mean, with the dizziness and the imbalance and the recurring sensations of fainting and what have you. That Dr. Gowdy's opinion included an ultimate conclusion was only one reason that she discounted that opinion. And that's why she discounted his opinion that Mr. Walker was unable to work. And what I worry about is the discounting in the trend of what's occurring between 2008 and 2014. And I understand that concern, Your Honor. But certainly the ALJ also considered that evidence. And her concern was that Mr. Gowdy's records do not support the severity of opinion that he offered. So, you know— But that's where, you know, how much of an essay is the doctor going to write down? The doctor is going to put down dizziness. They're not going to—they're not lawyers, right? You know, they don't write elaborate things down. They don't go back and review everything that's ever happened before. They treat the condition the person presents for. And what Mr. Walker presented for was his status post-stroke. So the existence of things like dizziness or memory problems or problems with balance would be— Which Dr. Gowdy reports quite regularly. He may not write it down in every single note. He reported it on maybe three occasions prior to 2012. There were an additional, I think I counted, six to eight occasions where he made no record of it and where Mr. Walker was saying things like he felt pretty well. The existence of dizziness or signs of worsening mental capacity would be extremely important to note in somebody who had a history of stroke because that might be an indication of additional problems or relapse. Mr. Walker was never referred back to a neurologist for follow-up. Dr. Gowdy didn't even suggest that he should go back to his neurologist. He didn't treat him for the complaints at any length of dizziness. And so ultimately, it was the ALJ's job to assess all of that evidence. She did so here, consistent with the regulations. She did not ignore any of the evidence. She addressed it head-on, and she did her job of weighing the evidence, and her opinion should be given deference. It was supported by substantial evidence, and it was consistent with the law. So we would ask that you affirm her decision. All right. Thank you very much. Anything further, Mr. Forbes? The weighting system Social Security uses is hopelessly defective. We know what controlling weight means. We know what no weight means. We don't know what some weight, little weight, partial weight, significant weight. No one knows what those mean. And this case . . . But don't courts do that all the time, place some weight, little weight? Yes, but we have an extensive history that cases have to be able to be meaningfully reviewed, and that they have to have accurate and logical . . . So you're saying that when she says partial weight, she has to say, insofar as I'm persuaded by this, but not by that. She's got to tell you which part she agrees with? It's got to be specific enough to review. The last point is that, from the kind of broad view, this ALJ goes out of the way to discount the primary care doctor's opinion, and goes out of the way to enhance the psychological CE's thrice revised opinion. The Dr. Roy opinion. Okay, I think we'll have to stop there. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.